DISTRICT OF NEW JERSEY
UNITED STATES BANKRUPTCY COURT

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Jessica Ann Berry, Esq. (Bar No. 029912007)
Greenspoon Marder LLP
Trade Centre South, Suite 700
100 W. Cypress Creek Road
Fort Lauderdale, FL 33309
TEL. (954) 491-1120
FAX (954) 343-6982
bankruptcy@gmlaw.com

Attorney for Reverse Mortgage Funding LLC

Case No. 22-13953-MBK

CHAPTER 13

Hearing Date: January 25, 2023

Judge: Chief Judge Michael B. Kaplan.

In Re:

Brian J Ashmore
*aka* Brian Ashmore and
Theresa M Ashmore

Debtors.

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)
(Re: 509 Stone Road, Union Beach, NJ 07735)

Reverse Mortgage Funding LLC ("Movant") hereby moves this Court for relief from the automatic stay, pursuant to 11 U.S.C. § 362 with respect to certain real property, having an address of 509 Stone Road, Union Beach, NJ 07735 (the "Property"), for all purposes allowed by the Note (defined below), the Mortgage (defined below), and applicable law, including but not limited to the right to foreclose.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

22-000850

If you do not want the Court to vacate the automatic stay as it relates to the property commonly known as 509 Stone Road, Union Beach, NJ 07735, or if you want the court to consider your views on the motion, then on or before *January 18, 2023* you or your attorney should complete the steps described in (a) and (b) below:

> (a) File with the court a written request for a hearing, and an answer explaining your position at:  **Clarkson S. Fischer U.S. Courthouse, Courtroom #8, 402 East State Street, Trenton, N.J. 08608.** If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.  You must also mail a copy to the following:

| | |
|---|---|
| **Greenspoon Marder LLP**<br>**100 W. Cypress Creek Rd., Suite 700,**<br>**Ft. Lauderdale, FL 33309**<br>**ATTORNEYS FOR MOVANT,**<br>**Reverse Mortgage Funding LLC** | ***Trustee***<br>**Albert Russo**<br>**Standing Chapter 13 Trustee**<br>**CN 4853**<br>**Trenton, NJ 08650-4853** |

> (b) Attend the hearing scheduled for Wednesday, January 25, 2023 at 9:00am in Courtroom #8 of the Clarkson S. Fischer U.S. Courthouse, 402East State Street, Trenton, N.J. 08608.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection, and may enter an order granting that relief. The facts and circumstances supporting this Motion are set forth in the Certification in Support of Motion for Relief from Stay filed contemporaneously herewith (the "Certification").

Movant seeks relief from the stay for cause as contemplated by Section 362(d)(1) of the Bankruptcy Code on account of, without limitation, the following reasons: Pursuant to the Mortgage contract a default occurs where the borrower is deceased and the borrower can no longer live in the home as a primary residence. As the borrower is deceased and the Debtors are not the legal owner of the property, this debt is in default.  There is no 'cure' for this default as a payment plan cannot correct this.

Movant requests the following relief:

(a)      Relief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Mortgage.

(b)      That this Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

(c)      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

(d)      For such other relief as the Court deems proper.

Movant further requests that upon entry of an order granting relief from stay, it be exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case.

**Statement of Non-Necessity of Brief:** The Movant certifies pursuant to D.N.J. LBR 9013-2 that the within motion involves common questions of law and fact and does not involve complex or novel issues such as to require the submission of a legal brief.

Date: December 21, 2022

By: /s/ Jessica Ann Berry_____
Jessica Ann Berry, Esq. (Bar No. 029912007)
Greenspoon Marder LLP
Trade Centre South, Suite 700
100 W Cypress Creek Rd.
Fort Lauderdale, FL 33309
TEL. (954) 491-1120
FAX (954) 343-6982
bankruptcy@gmlaw.com

22-000850

DISTRICT OF NEW JERSEY
UNITED STATES BANKRUPTCY COURT

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Jessica Ann Berry, Esq. (Bar No. 029912007)
Greenspoon Marder LLP
Trade Centre South, Suite 700
100 W. Cypress Creek Road
Fort Lauderdale, FL 33309
TEL. (954) 491-1120
FAX (954) 343-6982
bankruptcy@gmlaw.com

Attorney for Reverse Mortgage Funding LLC

In Re:

Brian J Ashmore
*aka* Brian Ashmore and
Theresa M Ashmore

Debtors.

Case No. 22-13953-MBK

CHAPTER 13

Hearing Date: January 25, 2023

Judge: Chief Judge Michael B. Kaplan

## DECLARATION IN SUPPORT OF MOTION FOR RELIEF
## FROM AUTOMATIC STAY BY REVERSE MORTGAGE FUNDING LLC

Danai M. St. Arnold , being first duly sworn, deposes and states:

1.  I am a **Assistant Secretary** of Reverse Mortgage Funding LLC. And I am authorized to sign this Certification on behalf of Reverse Mortgage Funding LLC ("Movant") with respect to a certain loan (the "Loan") provided to Debtor(s), which Loan is evidenced by the Note (defined below) and secured by the Mortgage (defined below). This certification is provided in support of the Motion for Relief from Stay filed contemporaneously herewith (the "Motion").

2.  As part of my job responsibilities for Reverse Mortgage Funding LLC, I am familiar with the types of records maintained by Reverse Mortgage Funding LLC in connection with the Loan and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Reverse Mortgage Funding LLC that pertain to the Loan and extensions of credit given to Debtor(s) concerning the Property (defined below).

22-000850

3.      The information in this certification is taken from Reverse Mortgage Funding LLC business records regarding the Loan. I have personal knowledge of Reverse Mortgage Funding LLC procedures for creating these types of records. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Reverse Mortgage Funding LLC regularly conducted business activities; and (c) it is the regular practice of Reverse Mortgage Funding LLC to make such records.

4.      The Debtors, Brian J Ashmore and Theresa M Ashmore, are potential heirs to the property.

5.      The borrower, Christopher Curtis, is deceased, date of death, May 29, 2020. Upon the death of the borrower, the loan is owed in full. A copy of the obituary notice is attached hereto as **Exhibit "A"**.

6.      The deceased borrower, Christopher Curtis, executed the Adjustable Rate Note dated February 9, 2007 with principal advances of up to of $420,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit "B"**. Movant is an entity entitled to enforce the Note.

7.      Pursuant to that certain Home Equity Conversion Mortgage, dated February 9, 2007 (the "Reverse Mortgage"), all obligations (collectively, the "Obligations") of the borrower under and with respect to the Note and the Mortgage are secured by the Property (as defined in the Motion). A true and correct copy of the Mortgage is attached hereto as **Exhibit "C"**.

8.      All rights and remedies under the Reverse Mortgage have been assigned to the Movant pursuant to those certain Assignments of Mortgage, true and correct copies of which are attached hereto as composite **Exhibit "D"**.

9.    Reverse Mortgage Funding LLC, services the underlying Note and Reverse Mortgage for the Property referenced in this Motion. In the event the automatic stay in this case is modified, this Case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Reverse Mortgage Funding LLC ("Movant"). Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Reverse Mortgage.

10.    The legal description of the property is:

ALL that certain lot, parcel or tract of land, situate and lying in the Borough of Union Beach, County of Monmouth and State of New Jersey being more particularly described as follows:

BEGINNING at a stake in the northerly line of Stone Road, said point being the following courses from the point formed by the intersection of the center line of Stone Road with the center line of Poole Avenue, A) North 61 degrees 56 minutes West 26.89 feet to an angle point in the northerly line of Stone Road; thence B) South 70 degrees 07 minutes West and 90.21 feet along said northerly line of Stone Road to the beginning point and running; thence

1. North 28 degrees 04 minutes East 66.32 feet to a point; thence

2. North 61 degrees 40 minutes 39 seconds West 153.35 feet to a point; thence

3. South 40 degrees 35 minutes 00 seconds West, 13.84 feet to a point; thence

4. South 19 degrees 53 minutes 00 seconds East, 151.93 feet to a point of the Northerly line of Stone Road; thence along same

5. North 70 degrees 07 minutes 00 seconds East, 65.00 feet to the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY:

Also known as Lot 18.01 in Block 125 on the Borough of Union Beach Tax Map.

Commonly known as 509 Stone Road, Union Beach, NJ 07735.

11.    As of the filing of the bankruptcy Petition, upon information and belief, the Debtors are not the legal owners of the Property.

22-000850

12.     Pursuant to the Reverse Mortgage contract, a default occurs where the property

ceases to be the principal residence of the borrower or the borrower fails to occupy the property.

13.     As of November 16, 2022, a balance of $432,728.72, exclusive of attorney fees,

charges and costs, is due and owing to Movant on said Note and Reverse Mortgage, together with

interest, late charges, fees and costs. A copy of the payoff is attached hereto as **Exhibit "E"**.

14.     The estimated value of the property is $237,200.00 according to the New Jersey

County Tax Boards Association. The basis for valuation is attached hereto as **Exhibit "F"**.

15.     Attached hereto as **Exhibit "G"** is the Certification in regard to the Post-Petition

Payment History on the Note and Reverse Mortgage.

16.     In addition reasonable attorney fees and court filing cost not to exceed $1,238.00

will be incurred in connection with seeking the relief requested in this Motion. Movant reserves

all rights to seek an award or allowance of such fees and expenses in accordance with applicable

loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.    Executed this **20** day of

December, 2022.

Name:
Title:      Danai M. St. Arnold
            Assistant Secretary

22-000850

# EXHIBIT A



## OBIT SEARCH

| Last Name | CURTIS | First Name | CHRISTOPHER |
| DOB | 12/31/1932 | Reference Code | Reverse Mortgac |

**Search**

| Name | DOB | Age | DOD | City | State | Validate |
|---|---|---|---|---|---|---|
| View CHRISTOPHER CURTIS | 12/31/1932 | 87 | 05/29/2020 | Keansburg | NJ | Invalidate |

Christopher P. Curtis Sr Union Beach - Christopher P. Curtis Sr., 87 of Union Beach, passed away on Friday, May 29, 2020 at Bayshore medical Center, Holmdel. Christopher was born on December 31, 1932 in Jersey City, lived in Bayonne until moving to Union Beach in 1991. He worked for Budweiser as a foreman. Prior to working for Budweiser, he was the owner/ operator of RJ Cleaners in Bayonne. Chris was a member of the Ancient Order of Hibernian's Division 2 of Monmouth, enjoyed traveling to Ireland, having a Guinness, in his younger years Chris enjoyed playing semi- pro baseball, tennis and playing in the Budweiser Olympics, camping and his greatest love was spending time with his family. Christopher was predeceased by his parents; Christopher and Pauline(nee D'Agostino) Curtis and his three sons; Kenneth Curtis in 1991, Brian Curtis in 2011 and Paul Curtis in 2014. He is survived by two sons and daughter in-law, Christopher Curtis Jr of Middletown and Arthur and Virginia Curtis of Middletown; two daughters and son in-law, Catherine Curtis of Brick and Theresa and Brian Ashmore of Matawan, four grandchildren, Sarah, Samantha, Jessica and Alfredo; and many nieces, nephews cousins and extended family members. Due to the current health crisis, The Curtis Family would like everyone to know that despite their desire to have everyone pay their respects, due to the current health crisis a private visitation will take place for family only and the burial will follow at Holy Cross in N. Arlington. The arrangements are entrusted to the Jacqueline M. Ryan Home for Funerals 233 Carr Avenue, Keansburg. To leave a letter of condolence go to www.jacquelinemryanfh.com

# EXHIBIT B



# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

**STATE OF NEW JERSEY**

**February 9, 2007**

**PROPERTY ADDRESS**                                    FHA Case Number: ███████████

509 STONE RD.
UNION BEACH, NEW JERSEY 07735
MONMOUTH COUNTY

### 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means **James B. Nutter & Company** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender up to a maximum principal amount of **Four Hundred Twenty Thousand and 00/100 Dollars ($420,000.00),** to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **February 9, 2007** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on DECEMBER 31, 2082. Interest will be charged on unpaid principal at the rate of **Six and 6/10 percent (6.600%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to and made part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

**(B) Place**
Payment shall be made at **4153 Broadway, Kansas City, Missouri 64111** or any such other place as Lender may designate in writing by notice to Borrower.

**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of assignment.

### 5. INTEREST RATE CHANGES

**(A) Change Date**
The interest rate may change on APRIL 1, 2007 and on___ that day of each succeeding year, or
 _X_  the first day of each succeeding month. Change Date means each date on which the interest rate could change.

**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of **1.50** percentage points to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

First Note

1

**(D) Limits on Interest Rate Changes**

— **Annual:** The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note

X **Monthly:** The interest rate will never increase above 16.600%.

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be created to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT IN FULL**

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property) or (c) a life estate in the Property.

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a least one other Borrower;

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

First Note



**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

    (i)    This Note is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii)    Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Christopher P. Curtis_                                    2-9-07

**CHRISTOPHER P. CURTIS** (Borrower)                                   Date

PAY TO THE ORDER OF

WITHOUT RECOURSE

JAMES B. NUTTER & COMPANY

BY _Tracey Rowan_

TRACEY ROWAN
ASST. SECRETARY

First Note

# EXHIBIT C

Accurate Land Title
Agency, Inc.
133 South Main Street
Milltown, NJ 08850

**MORTGAGE
(HOME EQUITY CONVERSION)**

Record and Return to:
James B. Nutter
4153 Broadway
Kansas City, Missouri 64111

**FHA Case Number:** ▮

---

**STATE OF NEW JERSEY                    MORTGAGE**

---

THIS MORTGAGE ("Security Instrument") is given on **February 9, 2007**. The Mortgagor is   **Christopher P. Curtis** whose address is   **509 STONE RD., UNION BEACH, NEW JERSEY 07735** ("Borrower"). This Security Instrument is given to **James B. Nutter & Company**, which is organized and existing under the laws of the State of **Missouri**, and whose principal office address is **4153 Broadway, Kansas City, Missouri 64111** ("Lender").  Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note;  (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law.  The maximum principal amount secured by this Security Instrument is US **Four Hundred Twenty Thousand and 00/100 Dollars ($420,000.00).** For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **MONMOUTH** County, New Jersey:

The real property located at the address **509 STONE RD., UNION BEACH, NEW JERSEY 07735**, in the county of **MONMOUTH**, state of **NEW JERSEY**, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the  Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

NJ 1st Mortgage

1.    **Payment of Principal and Interest.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2.    **Payment of Property Charges.**  Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire.  This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary").  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make payment for such loss Lender, instead of to Borrower and Lender jointly.  Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument.  Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**
 Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument.  "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

5.    **Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.  Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

NJ 1ˢᵗ Mortgage

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6.     Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7.     Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8.     Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.     Grounds for Acceleration of Debt.**
   **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

   (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

   (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred an no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

   **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:

   (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

   (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

   (iii) An obligation of the Borrower under this Security Instrument is not performed.

   **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this

NJ 1st Mortgage

Paragraph 9(a)(ii) or (b) occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii) and (b).  Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

**(e) Trusts.**  Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph.  A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.**  Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.    No Deficiency Judgments.**  Borrower shall have no personal liability for payment of the debt secured by this Security Instrument.  Lender may enforce the debt only through sale of the Property.  Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.  If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11.    Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full.  This right applies even after foreclosure proceedings are instituted.  To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full.  Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12.    First Lien Status**
**(a) Modification.**  Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a).  If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense.  If the title evidence indicates that

NJ 1st Mortgage

the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

13.    **Relationship to Second Security Instrument**.
**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14.    **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

NJ 1st Mortgage

**15.    Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16.    Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17.    Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18.    Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19.    Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20.    Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**21.    Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or

NJ 1ˢᵗ Mortgage

local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **Six and 6/10** percent (**6.600%**) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, ("Index") plus a margin. The Index is published in the Federal Reserve Bulletin and made available by the United States Treasury Department in Statistical Release H.15 (519). If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on **APRIL 1, 2007**, and on the first day of ____ and on that day of each succeeding year, or __X__ the first day of each succeeding month (Change Date) until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

____          **Annually Adjusting Variable Rate Feature** - The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

__X__          **Monthly Adjusting Variable Rate Feature** - The Calculated Interest Rate will never increase above **16.600%**.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23.    Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24.    No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**25.    Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es).]

|  | Condominium Rider |  | PUD Rider |
|---|---|---|---|
|  | Shared Appreciation Rider |  | Other |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

NJ 1st Mortgage

Witnesses: _Irene Andre_____

Signature _Christopher P. Curtis_____

**CHRISTOPHER P. CURTIS (Borrower)**

## Notary Acknowledgement

**State of New Jersey**
**County of** _Middlesex_

I _Irene Andre_____, a Notary Public in and for said county and state do hereby certify that **Christopher P. Curtis**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal on **February 9, 2007**.

Signature: _Irene Andre_____ [SEAL]
My commission expires:

```
┌─────────────────────────────────────┐
│         IRENE R. ANDRE              │
│         NOTARY PUBLIC              │
│       STATE OF NEW JERSEY          │
│  MY COMMISSION EXPIRES AUGUST 12, 2008  │
└─────────────────────────────────────┘
```

NJ 1st Mortgage

## EXHIBIT A

Exhibit A to the Mortgage given on **February 9, 2007**, by **Christopher P. Curtis** ("Borrower") to **James B. Nutter & Company** ("Lender"). The Property is located in the county of **MONMOUTH**, state of **NEW JERSEY**, described as follows:

Description of Property

Legal description attached hereto as Exhibit A and by this reference made a part hereof

## SCHEDULE A – Item 3 (Continued)
## Land Description

ALL that certain lot, parcel or tract of land, situate and lying in the Borough of Union Beach, County of Monmouth and State of New Jersey being more particularly described as follows:

BEGINNING at a stake in the northerly line of Stone Road, said point being the following courses from the point formed by the intersection of the center line of Stone Road with the center line of Poole Avenue, A) North 61 degrees 56 minutes West 26.89 feet to an angle point in the northerly line of Stone Road; thence B) South 70 degrees 07 minutes West and 90.21 feet along said northerly line of Stone Road to the beginning point and running; thence

1. North 28 degrees 04 minutes East 66.32 feet to a point; thence

2. North 61 degrees 40 minutes 39 seconds West 153.35 feet to a point; thence

3. South 40 degrees 35 minutes 00 seconds West, 13.84 feet to a point; thence

4. South 19 degrees 53 minutes 00 seconds East, 151.93 feet to a point of the Northerly line of Stone Road; thence along same

5. North 70 degrees 07 minutes 00 seconds East, 65.00 feet to the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY:

Also known as Lot 18.01 in Block 125 on the Borough of Union Beach Tax Map.

Commonly known as 509 Stone Road, Union Beach, NJ 07735.

NJ 1st Mortgage

# EXHIBIT D



## Monmouth County Document Summary Sheet



| MONMOUTH COUNTY CLERK<br>PO BOX 1251<br>MARKET YARD<br>FREEHOLD NJ 07728 | Return Name and Address<br>Reverse Mortgage Funding LLC<br>700 Corporate Boulevard<br>Newburgh, NY 12550<br>Post Closing Dept. | |
|---|---|---|

CHRISTINE GIORDANO HANLON
COUNTY CLERK
MONMOUTH COUNTY, NJ

INSTRUMENT NUMBER
2019017685
RECORDED ON
Feb 26, 2019
11:37:26 AM
BOOK:OR-9337
PAGE:535
Total Pages: 3

COUNTY RECORDING    $60.00
FEES
TOTAL PAID          $60.00

| Official Use Only | Submitting Company | James B. Nutter & Company |
|---|---|---|
| | Document Type | Assignment of Mortgage Assignment of Leases & Re ▼ |
| | Document Date *(mm/dd/yyyy)* | 12/07/2018 |
| | Total Number of Pages *(Including the cover sheet)* | 3 |
| | Consideration Amount *(If applicable)* | |

**Official Use Only**

FEB 25 2019 TW

| First Party | Name(s) *(Last Name, First Name or Company Name)*<br>James B. Nutter & Company<br>Curtis, Christopher P. | Address *(Optional)*<br>4153 Broadway, Kansas City, MO 64111<br>509 Stone Road, Union Beach, NJ 07735 |
|---|---|---|
| Second Party | Name(s) *(Last Name, First Name or Company Name)*<br>Mortgage Electronic Registration Systems, Inc. | Address *(Optional)*<br>1901 E Voorhees St., Ste. C, Danville, IL 61834 |

### The Following Section is Required for DEEDS Only

| Parcel Information | Municipality | Block | Lot | Qualifier | Property Address |
|---|---|---|---|---|---|
| | | | | | |

### Recording Reference to Original Document *(if applicable)*

| Reference Information<br>*(Marginal Notation)* | Book<br>8634 | Beginning Page<br>8802 | Instrument No.<br>2007032081 |
|---|---|---|---|

*Please do not detach this page from the original document as it contains important recording information and is part of the permanent record.*

Record and Return to:
Reverse Mortgage Funding LLC
700 Corporate Boulevard
Newburgh, New York 12550
Post Closing Dept.
Pin/ID/UPI: Lot 18.01 Blk 125

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, (Grantor) James B. Nutter & Company, having an address at: 4153 Broadway, Kansas City, MO 64111, does hereby assigns and transfers to (Grantee) Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Reverse Mortgage Funding LLC, beneficiary of the security instrument, its successors and assigns, whose address is 1901 E Voorhees St., Suite C, Danville, IL 61834, all of its right, title and interest in the below described mortgage.

Certain **MORTGAGE** dated February 09, 2007 in the amount of $420,000.00 executed by CHRISTOPHER P CURTIS, whose property is 509 STONE ROAD, UNION BEACH NJ, 07735-2727 to JAMES B. NUTTER & COMPANY, 4153 BROADWAY, KANSAS CITY, MO, 64111. Recorded on April 16, 2007 as Document No. 2007032081, Book 8634, Page 8802 in MONMOUTH County, State of NJ.

AN ATTACHED EXHIBIT (legal description)

Prepared by: Teresa Ryan, James B. Nutter & Company, 4153 Broadway, Kansas City, MO 64111. (816) 531-2345

IN WITNESS WHEREOF, the said Assignor, by the officer duly authorized, has executed the foregoing instrument on the 7th day of December 2018.

JAMES B. NUTTER & COMPANY

_____
Chuck Couch, Assistant Vice President

STATE OF MISSOURI
COUNTY OF JACKSON

On this 7th day of December 2018, before me, Carmen Boyce, personally appeared Chuck Couch, Assistant Vice President for James B. Nutter & Company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual or person upon behalf of which the individual acted, that he/she executed the instrument.

_____
Carmen Boyce, Notary Public
My Commission Expires: April 14, 2020

CARMEN BOYCE
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires: 04/14/2020
Commission # 16804704

EXHIBIT  – Legal Description

███████

509 STONE ROAD
UNION BEACH NJ 07735-2727

APN: Lot 18.01 Blk 125

ALL that certain lot, parcel or tract of land, situate and lying in the Borough of Union Beach, County of Monmouth and State of New Jersey being more particularly described as follows:

BEGINNING at a stake in the northerly line of Stone Road, said point being the following courses from the point formed by the intersection of the center line of Stone Road with the center line of Poole Avenue, A) North 61 degrees 56 minutes West 26.89 feet to an angle point in the northerly line of Stone Road; thence B) South 70 degrees 07 minutes West and 90.21 feet along said northerly line of Stone Road to the beginning point and running; thence

1.  North 28 degrees 04 minutes East 66.32 feet to a point; thence

2.  North 61 degrees 40 minutes 39 seconds West 153.35 feet to a point; thence

3.  South 40 degrees 35 minutes 00 seconds West, 13.84 feet to a point; thence

4.  South 19 degrees 53 minutes 00 seconds East, 151.93 feet to a point of the Northerly line of Stone Road; thence along same

5.  North 70 degrees 07 minutes 00 seconds East, 65.00 feet to the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY:

Also known as Lot 18.01 in Block 125 on the Borough of Union Beach Tax Map.

Commonly known as 509 Stone Road, Union Beach, NJ 07735.

NJ 1st Mortgage

-9-



## Monmouth County Document Summary Sheet

**Return Name and Address**

**Martone & Uhlmann**
**A Professional Corporation**
**777 Passaic Avenue, Suite 535**
**Clifton, New Jersey 07012**

MONMOUTH COUNTY CLERK
PO BOX 1251
MARKET YARD
FREEHOLD NJ 07728

| | |
|---|---|
| **Submitting Company** | MARTONE & UHLMANN, P.C. |
| **Document Type** | assignment of mortgage |
| **Document Date** (mm/dd/yyyy) | 11/20/2020 |
| **No. of Pages of the Original Signed Document** (Including the cover sheet) | 2 |
| **Consideration Amount** (If applicable) | |

**Official Use Only**

CHRISTINE GIORDANO HANLON
COUNTY CLERK
MONMOUTH COUNTY, NJ

INSTRUMENT NUMBER
2020146467
RECORDED ON
Dec 08, 2020
2:20:14 PM
BOOK:OR-9463
PAGE:1486
Total Pages: 2

COUNTY RECORDING    $50.00
FEES
TOTAL PAID         $50.00

**Official Use Only**

NOV 24 2020

2

| | **Name(s)** (Last Name First Name Middle Initial Suffix) (or Company Name as written) | **Address** (Optional) |
|---|---|---|
| **First Party** (Grantor or Mortgagor or Assignor) (Enter up to five names) | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC CURTIS/CHRISTOPHER P. | |
| **Second Party** (Grantee or Mortgagee or Assignee) (Enter up to five names) | **Name(s)** (Last Name First Name Middle Initial Suffix) (or Company Name as written) REVERSE MORTGAGE FUNDING LLC | **Address** (Optional) |

| | **Municipality** | **Block** | **Lot** | **Qualifier** | **Property Address** |
|---|---|---|---|---|---|
| **Parcel Information** (Enter up to three entries) | UNION BEACH | 125 | 18.01 | | 509 STONE ROAD |

| | **Book Type** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
|---|---|---|---|---|---|
| **Reference Information** (Enter up to three entries) | MTG | 8634 | 8802 | | 03/07/2007 |

*DO NOT REMOVE THIS PAGE.*
DOCUMENT SUMMARY SHEET (COVER SHEET) IS PART OF MONMOUTH COUNTY FILING RECORD. RETAIN THIS PAGE FOR FUTURE REFERENCE.

Not Certified Copy

RECORD AND RETURN TO:
MARTONE & UHLMANN, P.C.
777 PASSAIC AVE, STE 535
CLIFTON, NJ 07012
4115.0021

PREPARED BY:
FRANK J. MARTONE, ESQ.

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS:**

**THAT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE AS NOMINEE FOR REVERSE MORTGAGE FUNDING LLC ITS SUCCESSORS OR ASSIGNS**, residing or located at **1901 E. VOORHEES ST., SUITE C, DANVILLE, IL 61834**, herein designated as the Assignor, for and in consideration of the sum of one dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to

**REVERSE MORTGAGE FUNDING LLC**, residing or located at **1455 BROAD STREET, 2ND FLOOR, BLOOMFIELD, NJ 07003**, herein designated as the Assignee, a certain Mortgage dated **February 9, 2007**, made by **CHRISTOPHER P. CURTIS** on lands located in the **BOROUGH** of **UNION BEACH** in the County of **MONMOUTH** and State of New Jersey, to secure payment of the amount of **$420,000.00**, which Mortgage is recorded or registered on March 7, 2007 in the CLERK'S office of the County of **MONMOUTH** in Book 8634 of Mortgages at Page 8802. Premises commonly known as **509 STONE ROAD, UNION BEACH, NEW JERSEY 07735.**

**TOGETHER** with the Bond, Note, or other Obligation therein described, and the money due and to grow due thereon, with the interest. To have and to hold the same unto the said Assignee forever, subject only to all the provisions contained in the said Mortgage and the Bond, Note, or other Obligation. And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place, and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

In all references herein to any parties, persons, entities, or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

**IN WITNESS WHEREOF,** the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this day of _November 20_, 20 _20_.

Signed, Sealed and Delivered in the
Presence of or Attested by

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS") AS MORTGAGEE
AS NOMINEE FOR REVERSE MORTGAGE
FUNDING LLC ITS SUCCESSORS OR
ASSIGNS

_Matthew Hranchook_

Matthew Hranchook
(print name of witness and title)
(corporate seal)

_Kevin Paperd_          Asst Secretary

State of _Michigan_
County of _Clinton_ _____ SS.:

I certify that on the _20th_ day of _November_, 20 _20_,
_Kevin Paperd_ _____ personally came before me, and this person acknowledged under oath, to my satisfaction, that:

(a)    this person is the _Assistant Secretary_ of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE AS NOMINEE FOR REVERSE MORTGAGE FUNDING LLC ITS SUCCESSORS OR ASSIGNS the corporation named in this document;

(b)    this person is the attesting witness to the signing of this document by the proper corporate officer who is the _Asst. Secretary_ of the corporation;

(c)    this document was signed and delivered by the corporation as its voluntary act duly authorized by a proper resolution of its Board of Directors;

(d)    this person knows the proper seal of the corporation which was affixed to this document; and

(e)    this person signed this proof to attest to the truth of these facts.

Signed and sworn before me on

_November 20th_, 20 _20_

_Corinne Washburne_
Notary Public

CORINNE WASHBURNE
Notary Public
County of Ingham
My Commission Expires
January 10, 2027
Acting in the County of
(Seal)
STATE OF MICHIGAN

# EXHIBIT E



P.O. Box 40724
Lansing, MI 48901-7924
Customer Service: (866) 654-0020
Fax: (866) 616-2160

LoanType: HECM

Estate of CHRISTOPHER P.
CURTIS
509 STONE ROAD
UNION BEACH, NJ 07735

Loan Number: ▇▇▇▇▇

Good Through Date: Nov 30, 2022
Today's Date: Nov 16, 2022

RE: Loan Payoff

Dear Estate of CHRISTOPHER P. CURTIS

We are pleased to inform you that the payoff good through Nov 30, 2022 for the loan listed above is as follows:

| | | |
|---|---|---|
| Current Unpaid Balance | $420,722.00 | As of Nov 14, 2022 |
| Accrued Interest up to Payoff Date | $1863.67 | |
| Accrued MIP up to Payoff Date | $167.01 | |
| Service Fees | $35.00 | |
| Outstanding Advances | $9941.04 | |
| Total Payoff | $432,728.72 | |

Nov 2022 – Daily Interest @ 5.5800% = $64.32
Nov 2022 – Daily MIP @ 0.5000% = $5.76

IMPORTANT: This payoff quote is only accurate through the "good through" date shown above. The Daily Interest (i.e., the "per diem") may be different from month to month, thus the per diem for this quote is shown above. **If the payoff funds are not received by the "good through" date shown above, and the loan is in default, called due or foreclosure status, you must request an updated payoff quote.** Any overage received will be refunded via ACH to the account on file, if applicable. If you prefer a check by mail, please contact us to update or change your preferred disbursement method prior to payoff.

Please be advised that if payment is received in full, the loan and any line of credit (if applicable) will be permanently closed. If it is not your intention to close the loan and any line of credit, a positive unpaid loan balance must be maintained AND you must indicate with your prepayment that the loan is to remain open and not be paid in full and closed - include your intent with your check or in wire comments. If you are attempting to pay down the loan balance without closing the loan, the amount of your prepayment should be less than the Current Unpaid Balance shown above.

Following payoff, Reverse Mortgage Funding LLC will process the release of the first lien and request that the U.S. Department of Housing and Urban Development release the second lien, which will be forwarded to you by their office.

Please note that only wired or certified funds are accepted for payoff. All other types of payment received (personal check, business check, etc.) cannot be accepted and will be returned to sender.

Payoff funds must be made payable to and sent to:

**Wire instructions:**

| | |
|---|---|
| Name of Bank: | Comerica Bank |
| ABA #: | ██████████ |
| Account Name: | Reverse Mortgage Servicing |
| Account Number: | ██████████ |
| Reference: | Borrower's name & loan number |

**Overnight information (certified funds only):**

| | |
|---|---|
| Company Name: | Reverse Mortgage Funding LLC |
| Department: | Payment Processing |
| Address: | 3900 Capital City Boulevard |
| | Lansing, Michigan 48906 |
| Telephone: | 866.654.0020 |

Payoff funds received after 5:00 pm EST, or on a banking holiday, will be applied on the next business day.

We reserve the right to adjust any portion of this statement at any time for one of more of the following reasons, but not limited to: recent advances, returned items, additional fees or charges, disbursements made on your behalf, transfer of servicing and/or inadvertent clerical errors.

If you have any questions, please email Payoff@reversedepartment.com or call us at 866.654.0020.

Sincerely,
Reverse Mortgage Department
Reverse Mortgage Funding LLC

| IMPORTANT DISCLOSURES |
|---|

## Notice of Error and Request for Information

Federal law gives customers the right to notify us of an error regarding the servicing of their loan or to request information regarding their loan. If you wish to provide a notice of error or a request for information, you must write to us at the following address: P.O. Box 85400   Attn: Mailstop AUS-01   Austin, Texas  78708. The letter must provide the customer's name, loan number, and description of the error or detailed list of the information being requested.

## If your property is located in the State of Texas:

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above by telephone listed above or by email at smlinfo@sml.texas.gov.

## If your property is located in the State of New York:

Your servicer is either a registered servicer or exempt servicer registered with the Superintendent of the New York State Department of Financial Services. For further information or to make a complaint regarding your servicer you may contact the New York State Department of Financial Services Consumer Assistance Unit at (800) 342-3736 or by visiting www.dfs.ny.gov.

## If your property is located in the State of Arkansas:

Your servicer is licensed in Arkansas and complaints about your servicer may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free at (800) 981-4429.

## If your property is located in the State of Oregon:

Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (888) 877-4894 or visit http://dfr.oregon.gov.

## If your property is located in the State of Hawaii:

Your servicer is a licensed mortgage servicer in Hawaii.  Complaints may be submitted to the Hawaii Department of Financial Institutions at P.O. Box 2054, Honolulu, Hawaii 96805 or dfi@dcca.hawaii.gov.  A complaint form and instructions regarding how to file a complaint are available at http://cca.hawaii.gov/dfi/file-a-complaint/



**Reverse Mortgage Servicing Department**
PO Box 40724, Lansing, MI 48901-7924
3900 Capital City Boulevard, Lansing, MI 48906
Telephone: 866-654-0020  Fax: 844-629-2743

## LOAN PAYOFF INSTRUCTIONS

All payoff funds must be sent to the following address:

| | |
|---|---|
| **3900 Capital City Boulevard, Lansing, MI 48906** | **Attn: Payoff Processing Department** |

**OR**

via Wire Transfer to:

**Comerica Bank**

| | |
|---|---|
| **ABA Routing No.:** | ███████ |
| **Account No.:** | ███████ |
| **Account Name:** | Reverse Mortgage Servicing |
| **Reference:** | **Estate of CHRISTOPHER P. CURTIS** |
| **Property Address:** | 509 STONE ROAD |
| | UNION BEACH, NJ  07735 |
| **Loan Number:** | ███████ |

Note:  All payoff checks must be Certified Funds.  Personal or company checks are not acceptable. All payoff checks must be sent to the above address.

---

## REQUIRED REFUND INFORMATION

Please fill in all information in the spaces below. This information is required for us to process any refund that may be owed after the payoff funds are applied to the loan.

**Reverse Mortage Loan No:** ███████

**Borrower Name(s):** <u>Estate of CHRISTOPHER P. CURTIS</u>

*Please select who should be the payee on the refund check (check only one):*

☐ *Borrower(s) – (only if not deceased)*
☐ *The Estate of the deceased borrower*

Important: Refunds will be issued via ACH to the account on file, if applicable. If being issued by check, refund checks may not be made payable to anyone other than the recipients listed above. If this form is incomplete, a refund check will be mailed to the last known address of the borrower(s).

## MAILING INSTRUCTIONS

Mailing Address:_____

City:_____    State:_____        Zip:_____

Care of:_____

Contact Name:_____         Contact Phone#_____

Signature:_____         Date:_____

Printed Name:_____         Relation to Borrower:_____

*\*\*\*Please Note - A signature from an authorized party (Borrower, Attorney-In-Fact, Executor, Trustee) on the loan is required on this form.  This form will update the active mailing address for the above referenced account.  All future correspondence related to this reverse mortgage will be mailed to the address you have provided on this form regardless of the Paid In Full status.*

# EXHIBIT F

## Union Beach, NJ
## Taxpayer/Utility Information

| Block/Lot/Qual: | 125. 18.01 | Tax Account Id: | 1118 |
|---|---|---|---|
| Property Location: | 509 STONE ROAD | Property Class: | 2 - Residential |
| Owner Name/Address: | CURTIS, CHRISTOPHER P | Land Value: | 108,100 |
| | 509 STONE ROAD | Improvement Value: | 129,100 |
| | UNION BEACH, NJ 07735 | Exempt Value: | 0 |
| | | Total Assessed Value: | 237,200 |
| | | Additional Lots: | None |
| Special Taxing Districts: | | Deductions: | |

**Taxes**    **Utilities**

| Year | Due Date | Type | Billed | Balance | Interest | Total Due | Status |
|---|---|---|---|---|---|---|---|
| **2023** | 02/01/2023 | Tax | 1,352.64 | 1,352.64 | 0.00 | 1,352.64 | OPEN |
| **2023** | 05/01/2023 | Tax | 1,352.63 | 1,352.63 | 0.00 | 1,352.63 | OPEN |
| | **Total 2023** | | **2,705.27** | **2,705.27** | **0.00** | **2,705.27** | |
| **2022** | 02/01/2022 | Tax | 1,285.20 | 0.00 | 0.00 | 0.00 | PAID |
| **2022** | 05/01/2022 | Tax | 1,285.19 | 0.00 | 0.00 | 0.00 | PAID |
| **2022** | 08/01/2022 | Tax | 1,420.07 | 0.00 | 0.00 | 0.00 | PAID |
| **2022** | 11/01/2022 | Tax | 1,420.07 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2022** | | **5,410.53** | **0.00** | **0.00** | **0.00** | |
| **2021** | 02/01/2021 | Tax | 1,259.26 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 05/01/2021 | Tax | 1,259.26 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 08/01/2021 | Tax | 1,311.13 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 11/01/2021 | Tax | 1,311.12 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2021** | | **5,140.77** | **0.00** | **0.00** | **0.00** | |

Last Payment: 10/25/22

**Return to Home**











UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

Jessica Ann Berry, Esq. (Bar No. 029912007)
Greenspoon Marder LLP
Trade Centre South, Suite 700
100 W. Cypress Creek Road
Fort Lauderdale, FL 33309
TEL. (954) 491-1120
FAX (954) 343-6982
bankruptcy@gmlaw.com

Attorney for Reverse Mortgage Funding LLC

| | |
|---|---|
| In Re: | Case No.:      22-13953-MBK |
| Brian J Ashmore | Hearing Date:      January 25, 2023 |
| aka Brian Ashmore | Judge:      Chief Judge Michael B. Kaplan |
| Theresa M Ashmore | Chapter:      13 |

Recommended Local Form        ☒ Followed        ☐ Modified

## ORDER VACATING STAY

The relief set forth on the following page is hereby **ORDERED**.

Upon the motion of <u>Reverse Mortgage Funding LLC                          </u>, under Bankruptcy Code section 362(d) for relief from the automatic stay as to certain property as hereinafter set forth, and for cause shown, it is

ORDERED that the automatic stay is vacated to permit the movant to institute or resume and prosecute to conclusion one or more actions in the court(s) of appropriate jurisdiction to pursue the movant's rights in the following:

☒ Real property more fully described as:

509 Stone Road, Union Beach, NJ 07735

It is further ORDERED that the movant, its successors or assignees, may proceed with its rights and remedies under the terms of the subject mortgage and pursue its state court remedies including, but not limited to, taking the property to sheriff's sale, in addition to potentially pursuing other loss mitigation alternatives, including, but not limited to, a loan modification, short sale or deed-in-lieu foreclosure.   Additionally, any purchaser of the property at sheriff's sale (or purchaser's assignee) may take any legal action for enforcement of its right to possession of the property.

☐ Personal property more fully described as:

It is further ORDERED that the movant may join the debtor and any trustee appointed in this case as defendants in its action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The movant shall serve this order on the debtor, any trustee and any other party who entered an appearance on the motion.

*rev. 11/14/18*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Jessica Ann Berry, Esq. (Bar No. 029912007)
Greenspoon Marder LLP
Trade Centre South, Suite 700
100 W. Cypress Creek Road
Fort Lauderdale, FL 33309
TEL. (954) 491-1120
FAX (954) 343-6982
bankruptcy@gmlaw.com

Attorney for Reverse Mortgage Funding LLC

In Re:

 Brian J Ashmore
 aka Brian Ashmore
 Theresa M Ashmore

Case No.: _____22-13953-MBK_____

Chapter: _____13_____

Adv. No.: _____

Hearing Date: _____January 25, 2023_____

Judge: Chief Judge Michael B. Kaplan

## CERTIFICATION OF SERVICE

1.  I, _____Michelle Torres_____ :

      ☐  represent _____ in this matter.

      ☒  am the secretary/paralegal for ____Greenspoon Marder LLP____, who represents

      __Reverse Mortgage Funding LLC__ in this matter.

      ☐  am the _____ in this case and am representing myself.


2.      On _____December 21, 2022_____, I sent a copy of the following pleadings and/or documents
        to the parties listed in the chart below.
        Notice of Motion and Motion for Relief from Stay


3.      I certify under penalty of perjury that the above documents were sent using the mode of service
        indicated.

Date: ____December 21, 2022____          /s/Michelle Torres_____
                                          Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Brian J Ashmore and Theresa M ashmore<br>42 Denamar Drive<br>Matawan, NJ 07747 | Debtors | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Paul N. Mirabelli<br>Law Office of Paul N. Mirabelli<br>3400 Highway 35<br>PO Box 378<br>Hazlet, NJ 07730 | Debtor's Counsel | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☒ Other CM/ECF_____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Albert Russo<br>Standing Chapter 13 Trustee<br>CN 4853<br>Trenton, NJ 08650-4853 | Trustee | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☒ Other CM/ECF_____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| U.S. Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | U.S. Trustee | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☒ Other CM/ECF_____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| Michael A. Artis<br>United States Department of Justice<br>Office of the United States Trustee<br>One Newark Center<br>Suite 2100<br>Newark, NJ 07102 | U.S. Trustee's Counsel | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☒ Other CM/ECF_____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| | | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br><br>☐ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>(As authorized by the Court or by rule. Cite the rule if applicable.) |

*rev.8/1/16*